Jeremy J. Alberts (SBN 273290)
Batkhand Zoljargal (SBN 262918)
THE ALBERTS FIRM
1600 N. Broadway, Suite 1010
Santa Ana, CA 92706
714-441-1144 – Tel
714-441-1546 – Fax

Attorneys for Plaintiff, Ithiel Navarro

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ITHIEL NAVARRO, | Case No.: 13-cv-7494-GHK (JCx) |
| Plaintiff, | *Assigned to Hon. George H. King* |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Ocwen Loan Servicing, LLC, a Delaware Limited Liability Company; and Does 1 to 100, inclusive, | |
| Defendants. | Date: November 18, 2013<br>Time: 9:30 a.m.<br>Crtrm: 650 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiff Ithiel Navarro ("Plaintiff") by and through his attorneys of record hereby opposes Motion to Dismiss Plaintiff's Complaint filed by Defendant Ocwen Loan Servicing, LLC ("Motion to Dismiss"). This Opposition is based on Memorandum of Points and Authorities in support thereof, all the papers on file with

the Court, and any arguments made by Plaintiff's counsel at the hearing currently scheduled for this matter.

DATED: October 28, 2013                    THE ALBERTS FIRM


                              By:    */Batkhand Zoljargal/*
                                     Jeremy J. Alberts
                                     Batkhand Zoljargal,
                                     Attorneys for Plaintiff,
                                     Ithiel Navarro

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................... 1

II.  STATEMENT OF FACTS ........................................................1

III. LEGAL ARGUMENT…………………………………………4

   A. DEFENDANT IMPROPERLY REMOVED THE CASE TO THE
      FEDERAL COURT BASED ON DIVERSITY OF CITIZENSHIP…4

   B. STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL
      PROCEDURE 12(b)(6) ........................................................5

   C. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY HOLA……..5

   D. PLAINTIFF ALLEGED SUFFICIENT FACTS TO STATE A CLAIM
      FOR VIOLATION OF CIVIL CODE §2923.7…………………......9

   E. PLAINTIFF ALLEGED SUFFICIENT FACTS TO STATE A CLAIM
      FOR VIOLATION OF CALIFORNIA BUSINESS AND
      PROFESSIONS CODE SECTION 17200, ET. SEQ…………………11

IV.  CONCLUSION .........................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Through the instant lawsuit, Plaintiff Ithiel Navarro ("Plaintiff") will establish that Defendant Ocwen Loan Servicing, LLC ("Ocwen") engaged in conduct violating the Homeowner's Bill of Rights and wrongfully foreclosing on Plaintiff's real property located at 14344 Foothill Boulevard, Sylmar, California 91342 (hereinafter "Property" or "Subject Property").

Defendant Ocwen filed the Motion To Dismiss Plaintiff's Complaint For Failure To State A Claim Upon Which Relief Can Be Granted ("Motion to Dismiss'). However, Plaintiff has sufficiently pled both plausible factual allegations, as well as legal claims, to enable his Complaint ("Complaint") to move forward.  This is not the phase in litigation to weigh the merits of the case.  In reviewing the sufficiency of the claims asserted, the issue is not whether plaintiffs will ultimately prevail, but whether the plaintiffs are entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

## II.   STATEMENT OF FACTS

Plaintiff entered into a consumer loan transaction with Fieldstone Mortgage Company ("Fieldstone") to refinance the existing mortgage on a single family property located at 14344 Foothill Boulevard, Sylmar, California 91342. As part of the transaction, Plaintiff executed a Promissory Note in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") and granted the latter a security interest in the subject property in the form of a Deed of Trust, recorded with the Los Angeles County Recorder's Office on or about December 20, 2004. Comp. ¶ 12.

Plaintiff alleged in his Complaint that after March of 2006, servicing was undertaken by Chase Home Finance, LLC; in 2007, the loan was thereafter serviced by Defendant Ocwen. Comp. ¶ 13.

Plaintiff ultimately encountered difficulties making his monthly mortgage payments. In an attempt to stay current and thereby remain in lawful possession of the subject property, he desperately sought out other options, but despite his efforts, Plaintiff went into default; a Notice of Default was recorded on May 21, 2008. Comp. ¶ 14.

In July of 2008, Plaintiff filed for relief under Chapter 13 of the United States Bankruptcy Code; HSBC Bank, USA, beneficiary under the Deed of Trust obtained relief from the automatic stay on June 9, 2011. A Notice of Trustee's Sale, scheduled for August 26, 2013 was recorded on July 31, 2013. Comp. ¶ 15.

Plaintiff had meanwhile received a solicitation from Ocwen in the mail in mid-July of 2013, encouraging him to apply for mortgage assistance. On August 15 Plaintiff's daughter, Miroslava, called Ocwen to inquire about a loan modification. She was instructed to visit Ocwen's website and download an application and to follow the directions contained within the solicitation letter as to the additional income- and employment-related documentation that would also need to be included. Comp. ¶ 16.

Miroslava did precisely as she was instructed; she filled out an application under the Making Home Affordable Program ("HAMP"), compiled Plaintiff's financial information, and thereafter scanned and emailed everything to the email address provided on August 16. In a letter from Ocwen dated that same day, Plaintiff was assigned a "Relationship Manager" named "Gwen G. Franks" who would be responsible for the application's processing, and was instructed to call to schedule time with her. Plaintiff did so, and telephonic appointment with Franks was arranged for August 21. Comp. ¶ 17.

Plaintiff was not contacted that day. He and Miroslava called Gwen Franks' contact number and were informed by a different Ocwen representative that she was unavailable, and that Plaintiff's application was denied because the scheduled sale

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3

date of August 26 "was too close."  The representative did, however, curtly state that if Plaintiff paid $117,000.00 to reinstate the loan, the upcoming sale would be halted. Comp. ¶ 18.

4
5
6
7
8

Plaintiff's residence was sold at a foreclosure sale, which was conducted as scheduled – a mere 10 days after his application had been electronically submitted. Notably, Plaintiff received a letter from Ocwen which stated that as of the date of the letter – August 20 – there was a confirmed sale date within 7 days, reiterating this as the reason for the application's denial. Comp. ¶ 19.

9
10
11
12
13
14
15

Under the relevant HAMP guidelines, if a homeowner has been evaluated under the program, a servicer is directed, first and foremost, to determine if the homeowner meets basic eligibility criteria.  Once this determination is made, then – and only then – does the servicer have discretion to stop a sale that is scheduled within 7 business days.  If a sale is impending, but scheduled more than 7 business days, the servicer must suspend the sale in order to complete a full review. Comp. ¶ 20.

16
17
18
19

Given the time frame with respect to Plaintiff's HAMP application submission, August 16 was *exactly* seven business days before the Trustee's Sale.  Given the HAMP guidelines detailed above, Ocwen was obligated to determine Plaintiff's basic eligibility *before* exercising its discretion not to stop the sale. Comp. ¶ 21.

20
21
22
23
24

Plaintiff alleged, on information and belief, in his Complaint that once his application was submitted on August 16, Ocwen failed to conduct any sort of eligibility review and instead simply denied the application because a Trustee's Sale was impending. Comp. ¶ 22. As such, Plaintiff was deprived of the opportunity to have his loan modified, let alone be reviewed for a loan modification. Comp. ¶ 23.

25
26

Plaintiff's subsequent inquiries to Ocwen have been unavailing.  He did, however, receive a letter dated August 27, 2013 – one day after the sale – which

27
28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES**

1   thanked him for submitting an application and, somewhat ironically, assured him that
2   Ocwen was processing his request as quickly as possible.[1] Comp. ¶ 24.

### III.   LEGAL ARGUMENT

### A.   DEFENDANT IMPROPERLY REMOVED THE CASE TO THE FEDERAL COURT BASED ON DIVERSITY OF CITIZENSHIP

Plaintiff filed his claims against Defendant Ocwen in the Superior Court of California for the County of Los Angeles on September 09, 2013. Defendant Ocwen removed the case to the United States District Court for the Central District of California on or around October 09, 2013. However, such removal is improper because the amount in controversy does not exceed $75,000.

An action may be removed to a district court in accordance with 28 U.S.C. § 1441(b) when the district court has original jurisdiction over the state court action on the basis of diversity of citizenship pursuant to 12 U.S.C. § 1332. In addition to diversity of citizenship of parties, "the matter in controversy [must] exceed[s] the sum of value of $75,000, exclusive of interest and costs…" 28 U.S.C. § 1332(a)(1). At no point in his Complaint, Plaintiff sought cancelling of the completed trustee's sale on the Subject Property. Plaintiff sought damages for violation of California Civil Code Section 2923.7 whereas a plaintiff can recover treble actual damages or statutory damages of $50,000, whichever is greater. Cal. Civ. Code §§ 2924.12(b), 2924.19(b). Comp. ¶ 29. Therefore, this action does not meet the jurisdictional amount.

///

///

---

[1] Such an outcome is hardly unique; Ocwen's practice in this respect has been termed, within the mortgage lending context, "dual tracking," whereby loan modification negotiations are handled by a specified department within a given lender's business, while another, entirely distinct department is charged with default monitoring and the institution of foreclosure proceedings. These departments typically operate independently of one another, foreclosure being filed without inquiry as to ongoing negotiations. As such, one would be hard-pressed to find a more appropriate instance to use the oft-quoted idiom, "*one hand not knowing what the other is doing.*"

**B.**   **STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).  The standard for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 811 (1993) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added).

The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief in the complaint. *See Rutman Wine Co. v. E. & J.Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987).  The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  It is not a procedure for resolving a contest about the facts or the merits of the case.  In reviewing the sufficiency of the complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  Furthermore, more recently, the U.S. Supreme Court has held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, would "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly,* 55 US 544 (2007).

**C.**   **PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY HOLA**

The issue here is whether Plaintiff's claim for violations of California Civil Code 2923.7 is pre-empted by HOLA.

The preemption doctrine is rooted in the Supremacy Clause of the U.S. Constitution. U.S. Const., art. VI, cl. 2. However, pre-emption analysis is not simple and Defendant Ocwen cannot just cite some cases and expect the court to agree with its statements. Defendant Ocwen alleged that the "[a]n assignment of Deed of Trust was recorded, referencing the assignment of the Loan to HSBC Bank USA, National Association, as trustee of the Fieldstone Mortgage Investment Trust, Series 2005-1." Motion to Dismiss, page 1, at *26-28.

"Where a national association, such as [HSBC Bank USA, National Association], acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA." *Haggarty v. Wells Fargo Bank*, N.A., C 10-02416 CRB, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011). However, here, HSBC Bank, National Association did not acquire the loan of a federal savings bank. In fact, the original loan was made by Fieldstone (*See* Comp. ¶ 12) which is not a federal savings bank subject to HOLA.

There is no case on point issued by the United States Supreme Court or by the Ninth Circuit Court of Appeals. But there is a plenty of guidance in other pre-emption cases. Courts seem to have taken into account several considerations.

First, "[p]re-emption should not be inferred ... simply because the agency's regulations are comprehensive." *R.J. Reynolds Tobacco Co.*, 479 U.S. at 149, 107 S.Ct. 499. Federal regulations have "to be sufficiently comprehensive to authorize and govern programs in States which [have] no requirements of their own as well as cooperatively in States with such requirements." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (alteration and internal quotation marks omitted). As the Supreme Court stated, "merely because the federal provisions were sufficiently comprehensive to meet the need identified by Congress did not mean that States and localities were barred from identifying additional needs or imposing further requirements in the

field." *Id.* Only because the federal government decided to regulate lending through HOLA does not mean that the State of California was barred from identifying additional needs or impose further requirements on banks to protect borrowers in difficult recession years following predatory lending collapse.

Second, the United States Supreme Court explained the method of determining pre-emption when it decided the pre-emptive effect of the Federal Cigarette Labelling and Advertising Act. *Cipollone v. Liggett Group, Inc., supra,* 505 U.S. at p. 523, 112 S.Ct. 2608. We "must fairly but—in light of the strong presumption against pre-emption—narrowly construe the precise language of [the preemptive statute or regulation] and we must look to each of [the plaintiffs' state] law claims to determine whether it is in fact pre-empted." *Cipollone,* pp. 523–524, 112 S.Ct. 2608. As to each state law claim, the central inquiry is whether the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly pre-empts. *Cipollone,* p. 524, 112 S.Ct. 2608. In other words, state law is "nullified to the extent that it actually conflicts with federal law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and internal quotation marks omitted); *see also Wyeth v. Levine,* 555 U.S. 555, 129 S.Ct. 1187, 1193–94, 173 L.Ed.2d 51 (2009). Here, there is no conflict. The simple duties prescribed by California Civil Code § 2923.7 are not requirements or prohibitions of the sort that HOLA pre-empts. That HOLA pre-empts (1) state laws that (2) either purport to regulate federal savings associations or otherwise materially affect their credit activities. The Civil Code simply asks banks to act with respect to homeowner's rights, by providing a single point of contact to

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES**

1   homeowners.  It is not impossible to comply with both HOLA and California Civil

2   Code § 2923.7.

3          Third, there can be presumption against pre-emption which applies here. When

4   "Congress has legislated in a field which the States have traditionally occupied, we

5   start with the assumption that the historic police powers of the States were not to be

6   superseded by the Federal Act unless that was the clear and manifest purpose of

7   Congress." *Wyeth vs. Levine, 129 S.Ct. 1887 (2009),* at 1194–95. Defendant Ocwen

8   is required to demonstrate "a conflict between a particular local provision and the

9   federal scheme, that is strong enough to overcome the presumption that state and

10  local regulation matters can constitutionally coexist with federal regulation."

11  *Hillsborough County,* 471 U.S. at 716, 105 S.Ct. 2371; *see also Geier v. Am. Honda*

12  *Motor Co., Inc.,* 529 U.S. 861, 885, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). Here,

13  because the *process of foreclosure* has traditionally been a matter of state real

14  property law, a point noted both by the United States Supreme Court in *BFP v.*

15  *Resolution Trust Corp.* (1994) 511 U.S. 531, 541–542, 114 S.Ct. 1757, 128 L.Ed.2d

16  556, then the presumption against pre-emption applies and Defendant Ocwen is

17  required to show that a conflict between HOLA and the requirements of California

18  Civil Code § 2923.7 is so strong as to overcome the presumption that California Civil

19  Code § 2923.7  can constitutionally coexist with HOLA. Defendant Ocwen could not

20  do that.

21          Finally, as the court stated in *Mabry vs. Superior Court*, "[b]y contrast, we

22  have not been cited to anything in the federal regulations that governs such things as

23  initiation of foreclosure, notice of foreclosure sales, allowable times until foreclosure,

24  or redemption periods. Given the traditional state control over mortgage foreclosure

25  laws, it is logical to conclude that if the Office of Thrift Supervision wanted to

26  include foreclosure as within the preempted category of loan servicing, it would have

27  been explicit. Nothing prevented the office from simply adding the words

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES**

"foreclosure of" to section 560.2(b)(10)." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231, 110 Cal. Rptr. 3d 201, 218 (2010)

Therefore, Plaintiff's state claims are not barred by HOLA.

**D.** **PLAINTIFF ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR VIOLATION OF CIVIL CODE §2923.7**

California Civil Code 2923.7 was amended per a bill signed into law on July 11, 2012 and effective January 1, 2013 to establish that a borrower requesting a foreclosure prevention alternative shall immediately be assigned a "single point of contact." That term is defined as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process."

Subdivisions (b) and (d) of 2923.7 address the responsibilities of the single point of contact, namely

(1) communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options;

(2) coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application;

(3) having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative;

(4) ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any;

(5) having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Also, subsection (c) provides "The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current," and (d) provides "The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor."

The law is tailored to keep the borrower in contact with someone sufficiently familiar with the borrower's case and someone with the power to advance the borrower's loan modification application or stop the foreclosure process, if necessary. Logically, this should lead to fewer "Dual Tracking" foreclosures that resulted from the borrower communicating with an endless number of lower level employees.

Here, Plaintiff received a solicitation from Ocwen in the mail in mid-July of 2013, encouraging him to apply for mortgage assistance. Comp. ¶ 16. Plaintiff (or his daughter) filled out an application under the Making Home Affordable Program ("HAMP"), compiled Plaintiff's financial information, and thereafter scanned and emailed everything to the email address provided on August 16, 2013. In a letter from Ocwen dated that same day, Plaintiff was assigned a "Relationship Manager" named "Gwen G. Franks." Plaintiff set up a telephonic appointment with Franks for August 21. Comp. ¶ 17. Plaintiff was not contacted that day. Plaintiff then contacted Gwen Franks and was informed by a different Ocwen representative that she was unavailable, and that Plaintiff's application was denied because the scheduled sale date of August 26 "was too close." Comp. ¶ 18.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff received a letter from Ocwen which stated that as of the date of the letter – August 20 – there was a confirmed sale date within 7 days, reiterating this as the reason for the application's denial. Comp. ¶ 19.

However, under the relevant HAMP guidelines, if a homeowner has been evaluated under the program, a servicer is directed, first and foremost, to determine if the homeowner meets basic eligibility criteria.  Once this determination is made, then – and only then – does the servicer have discretion to stop a sale that is scheduled within 7 business days.  If a sale is impending, but scheduled more than 7 business days, the servicer must suspend the sale in order to complete a full review. Comp. ¶ 20.

Given the time frame with respect to Plaintiff's HAMP application submission, August 16 was *exactly* seven business days before the Trustee's Sale.  Given the HAMP guidelines detailed above, Ocwen was obligated to determine Plaintiff's basic eligibility *before* exercising its discretion not to stop the sale. Comp. ¶ 21.

As a direct and proximate result of Defendants' statutory violations, Plaintiff has since lost his home; he currently stands to be evicted.  He has thus suffered, and continues to suffer, damages in an amount to be determined according to proof at the trial of this action. Comp. ¶ 31.

Therefore, Plaintiff alleged sufficient facts to state a cause of action for violation of California Civil Code Section 2923.7.

**E.**      **PLAINTIFF ALLEGED SUFFICIENT FACTS TO STATE A CLAIM FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET. SEQ.**

The Unfair Competition Law (UCL) is codified in California Business and Professions Code section 17200, et. seq.  The UCL prohibits any unlawful, unfair, or fraudulent business practice.  The UCL is written in the disjunctive, which means a business act or practice can be alleged to be all or any of the three prongs. *Berryman*

1    *v. Merit Property Management, Inc.,* 152 Cal.App. 4th 1544, 1554 (2007). Here,

2    Plaintiff alleged in his Complaint that Defendant Ocwen has engaged in practices that

3    are: (1) unfair, (2) likely to deceive, and (3) unlawful.

4          "[T]he Supreme Court has not yet enunciated a legal test for unfairness in

5    consumer actions under the unfair competition law. The courts of appeal have

6    variously suggested that a practice is unfair if it offends an established public policy

7    or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to

8    consumers,' and that unfairness is determined by weighing the utility of the practice

9    against the gravity of the harm to the consumer." *Kunert v. Mission Financial*

10   *Services Corp.,* 1 Cal.Rptr.3d 589, 607 (2003).  The harm to Plaintiff here is clear –

11   he lost his home due to Defendant Ocwen's practice of denying loan modification

12   applications without evaluating them when a trustee's sale is "too close." A loan

13   modification, if properly evaluated and approved, would have been a complete

14   defense to the trustee's sale. The utility of such a frivolous practice, in contrast to

15   HAMP guidelines, is minimal when measured against Plaintiff's loss of his

16   opportunity to preserve the biggest asset of his life.

17         Defendant Ocwen also engaged in "fraudulent" business practices. To state a

18   claim for a fraudulent business practice under section 17200, Plaintiff needs only

19   demonstrate that "members of the public are likely to be deceived."  *Bank of the West*

20   *v. Sup. Ct.,* 2 Cal.4th 1254, 1267 (1992) citing to *Chern v. Bank of America,* 15

21   Cal.3d 866, 876 (1976).  Ocwen's  business pattern in , is extremely likely to deceive

22   both Plaintiff and the public. Here, Plaintiff alleged in his Complaint that under the

23   relevant HAMP guidelines, if a homeowner has been evaluated under the program, a

24   servicer is directed, first and foremost, to determine if the homeowner meets basic

25   eligibility criteria.  Once this determination is made, then – and only then – does the

26   servicer have discretion to stop a sale that is scheduled within 7 business days.  If a

27   sale is impending, but scheduled more than 7 business days, the servicer must

28

suspend the sale in order to complete a full review. Comp. ¶ 20. Given the time frame with respect to Plaintiff's HAMP application submission, August 16 was *exactly* seven business days before the Trustee's Sale. Given the HAMP guidelines detailed above, Ocwen was obligated to determine Plaintiff's basic eligibility *before* exercising its discretion not to stop the sale. Comp. ¶ 21. Such a convoluted practice of denial because the sale is "too close" was deceptive to Plaintiff and is to the public.

In addition, Plaintiff has alleged that Defendant Ocwen engaged in an unlawful business practices by violating California Civil Code Sections 2923.6, 2923.7 and 2924.10. Comp. ¶ 34. Defendant's aforementioned conduct is unlawful and thus satisfies the "unlawful" prong of California Business and Professions Code Section 17200.

Therefore, Plaintiff alleged sufficient facts to state a cause of action for violation of California Business and Professions Code Section 17200, et. seq.

## IV.   <u>CONCLUSION</u>

When the Court accepts the factual allegations in Plaintiff's Complaint as true the Court can make a "reasonable inference" that Ocwen has engaged in misconduct for which it may be liable. Therefore, Plaintiff respectfully requests that the Court DENY Defendants' Motion to Dismiss, in its entirety.

To the extent the Court dismisses any of Plaintiff's claims, Plaintiff requests the opportunity to amend his pleading to cure any deficiency.

DATED: October 28, 2013                    THE ALBERTS FIRM


By:    */Batkhand Zoljargal/*
       Batkhand Zoljargal,
       Attorney for Plaintiff,
       Ithiel Navarro

Page | 13